EUSTACIO GALVAN v. THE STATE.

No. 3732.   Decided October 27, 1915.

1.—Murder—Continuance—Impeaching Testimony—Rule Stated.

The rule is that where the testimony of the alleged absent witness could only be available to impeach the State's witness, who is to testify in the case, a continuance should be refused. Following Garrett v. State, 37 Texas Crim. Rep., 198, and other cases.

2.—Same—Evidence—Husband and Wife.

Where the record on appeal showed that the woman who testified against the defendant was not his wife, an objection on that account is untenable

3.—Same—Indictment—Changes and Erasures—Alteration—Witnesses on Indictment.

Where the original indictment is not sent to this court for inspection, and the copy in the record is regular in every respect, a complaint that it had been changed, in the absence of specific allegations and affidavits attached to the motion for new trial, there was no reversible error. Besides, the placing of the names of witnesses on the back of the indictment, after its return into court is not an alteration.

4.—Same—Charge of Court—Objections.

In the absence of exceptions to the charge of court, objections thereto in the motion for new trial can not be considered.

**5.—Same—Sufficiency of the Evidence.**

Where, upon trial of murder, the evidence was sufficien., to sustain the conviction, there was no reversible error.

**6.—Same—Indeterminate Sentence—Reform of Judgment.**

Where the lower court ignored the indeterminate sentence law, the judgment will be reformed, and the cause affirmed.

Appeal from the District Court of Atascosa. Tried below before the Hon. F. G. Chambliss.

Appeal from a conviction of murder; penalty, imprisonment for life in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*C. C. McDonald,* Assistant Attorney Genera., for the State.

HARPER, JUDGE.—Appellant was indicted, charged with murder, and when tried was convicted and his punishment assessed at imprisonment in the penitentiary for life.

There are three applications for a continuance or postponement of the case when called for trial. One was on account of the absence of Geo. Shaw, his mother, Mrs. Shaw, and Pedro Herrera; another was to secure the attendance of Dr. Will Gibson. The attendance of all these witnesses was secured, consequently these two applications present no error. The third application was to secure the attendance of Calna Morales and Sam Alberts, who are alleged to reside in Bexar County, Texas. The return of the sheriff of Bexar County shows that they could not be found in that county. As the testimony, it is stated, expected to be elicited from them would only go to impeach the State's witness, Pabla Gaitan,—that she made statements out of court different to what her testimony would be and was on the trial,—it is not of that material character that we can say the court abused his discretion in overruling the application. The rule is that where the testimony sought could only be available to impeach a State's witness, who is to testify in the case, the continuance should be refused. (Garrett v. State, 37 Texas Crim. Rep., 198; Rodgers v. State, 36 Texas Crim. Rep., 563.) When the witness Pabla Gaitan was on the witness stand she was not questioned in regard to this matter. If she had been she might have admitted making the statements alleged to have been made by her to Calna Morales and Sam Alberts, and if she had admitted making the statements, if the witnesses had been present their testimony would not have been admissible.

It is claimed the court erred in permitting the witness Pabla Gaitan to testify, as she was the wife of appellant. If she had been his wife it would have been improper to permit her to testify. She testified: "I was never married to Eustacio Galvan; we were just living together. I was married and am now married to another man, but he is not

living with me. I have never been divorced from him." Appellant himself testified: "I am not married to Pabla Gaitan. I am married to another and different woman, and have never been divorced from that woman." The court did not err in permitting the witness to testify.

Appellant excepted to the indictment on the ground that changes had been made therein. That the names of witnesses had been placed on the back of the indictment since it had been returned into court. This would not be an alteration of the indictment. The motion also states that on the face thereof there appears an erasure and blotch in the words "to die" and irregularities in the figures "1914." The original indictment is not sent to us for inspection, and the indictment copied in the record is regular in every respect. There is no affidavit of any person attached to the motion; it is not sworn to, and no specific allegation that any such changes had been made since it was returned into court. Under such circumstances the court did not err in overruling the motion.

There were no exceptions reserved to the charge of the court when submitted to counsel for inspection, and no complaint is made to it even in the motion for a new trial. In the motion for new trial there is complaint that the court erred in refusing to give the special charges requested by appellant, citing them by number. As the court's charge was not in any manner excepted to, no error is presented by the special charges requested.

The only other complaint is that the evidence is insufficient. The State's testimony is that appellant came home angry; that the little three-year-old girl was crying on a pallet, and he picked her up and placed her on the door of the stove or range, which had fallen to the floor. That the door was hot, and the little girl began to cry, and began urinating; that he picked the child up and threw her some eight or ten feet into the next room; the child was picked up in a dying condition. Dr. McDuff, a few days after the little girl was buried, had the body exhumed, and he testifies: "Its head was cracked. I clipped the skin on its head and pulled its skull apart, and made a careful examination of the same. This child has had a blow or violence has been used on its head to cause its death. That is, the head had come in contact with some hard substance from which contact the skull was cracked, causing blood to settle around the brain and to clot, which produced death. The leg which I speak of had been broken for some time prior to its death." No other cause is suggested for the death of the child than that it received the fatal injury when thrown into the next room by appellant. She died almost instantly after being thrown into the room by appellant. There is nothing suggested in the record whereby the child could have received the injury in any other way.

The judge in passing sentence ignored the indeterminate sentence law, and sentenced appellant to a fixed term of imprisonment. The judgment will be reformed so that the sentence will read that he be imprisoned in the penitentiary for a term not less than five years nor

longer than his natural life, and the clerk of this court will enter proper judgment.

The judgment is reformed and affirmed.   ·   *Affirmed.*